PRESENT:  All the Justices

PINEY MEETING HOUSE INVESTMENTS, INC.

                                        OPINION BY
v.    Record No. 111548           JUSTICE WILLIAM C. MIMS
                                        June 7, 2012
FRED A. HART, JR., ET AL.

        FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
                    David H. Beck, Judge

     In this appeal, we consider whether the circuit court erred
in sustaining exceptions to the report of a commissioner in
chancery.  Specifically, we review the circuit court's
conclusion that a buried propane tank and well under an easement
for ingress and egress constituted unreasonable interference
with the easement owner's rights as a matter of law, even if the
improvements did not affect vehicular access.  We also consider
whether the circuit court erred in awarding costs and attorney's
fees to the prevailing party.

                   BACKGROUND AND PROCEEDINGS BELOW

     Fred A. Hart, Jr. and Mary Ann Hart ("the Harts") filed a
complaint in the Circuit Court of Spotsylvania County against
Piney Meeting House Investments, Inc. ("PMH").  The Harts owned
real property on Lake Anna that included a 30-foot easement.
The Harts' grantor conveyed to them "an easement and right-of-
way for ingress, egress, and related utilities over the
remaining lands of the party of the first part, said easement
and right-of-way to be thirty (30) feet in width and run from

the property herein conveyed" to State Route 612. PMH later acquired property adjacent to the Harts' which was encumbered by 15 feet of the 30-foot wide easement. The Harts alleged that PMH placed various obstructions in the 15-foot-wide easement area on PMH's property, including an electric box, generator, well, propane tank, trees, and mulch. The Harts alleged that the presence of the obstructions in the easement negatively affected their effort to market their property. In its answer, PMH denied that the obstructions interfered with the Harts' full use and enjoyment of the easement.

The circuit court referred the matter to a commissioner in chancery, who conducted an evidentiary hearing. The Harts testified that the items obstructed their use of the easement, and narrowed it in one place to eight feet in width. Mr. Hart testified that a buyer offered a contract on the Harts' property for $675,000 but "backed out of the deal because they were afraid that they were not going to have full access" due to the obstructions. On cross-examination, Mr. Hart admitted that the buried propane tank did not create any impediment, though he speculated that it would be difficult to access the tank if the Harts were to pave the easement.

At the conclusion of the hearing before the commissioner, PMH conceded that the electric box and generator interfered with the use of the easement, but maintained that the well and

propane tank did not materially interfere with the Harts' use of the easement. In his written report, the commissioner found that the electric box, the generator, the mulch, and the trees materially encroached into the easement and significantly reduced the area of the easement available to the Harts. The commissioner concluded that PMH "is to be enjoined from maintaining these encroachments."

The commissioner found that the well and propane tank were both located below ground level. However, the well had an above-ground fixture that was a significant encroachment, and the propane tank had a cap at ground level. Regarding the well's fixture, the commissioner referenced testimony regarding a modification which would remove the above-ground obstruction while permitting continuing use of the well. The commissioner found that PMH should be given a reasonable period, not to exceed 90 days, (1) to either remove the above-ground well obstruction or relocate the well and (2) to satisfy the circuit court the ground-level propane tank cap was strong enough for vehicular traffic or relocate the tank. The commissioner ordered that 2/3 of the costs of the proceedings would be borne by PMH and 1/3 by the Harts.

Only the Harts filed exceptions to the commissioner's report, objecting to the findings regarding the well and propane tank. They argued that pursuant to settled Virginia law, the

3

commissioner erred in allowing the fixtures to remain underground because "'where a reservation is of a certain width[,] that cannot be encroached upon, period.'" The Harts also argued that the well and propane tank created significant liability questions.

The circuit court thereafter heard argument on the Harts' exceptions to the report. The Harts argued that they were entitled to their attorney's fees because PMH had denied their request for admission that stated: "Admit that you have no defenses to the Plaintiff's claims." The Harts noted that if a party fails to admit the truth of any matters requested under Rule 4:11, the party requesting admission may recover reasonable expenses, including attorney's fees, in successfully making the proof. Rule 4:12(c).

The circuit court sustained the Harts' exceptions and ratified the remainder of the report. The court ordered PMH to remove all items placed in the easement, including the well and propane tank, and permanently enjoined PMH from placing anything within the easement which would in any way affect the Harts' use of the entire width of the easement.

The court found that pursuant to Rules 4:11(a) and 4:12(c) the Harts were entitled to recover their attorney's fees from PMH in the amount of $6,000. The court also found that the Harts were entitled to recover their costs from PMH, including

4

filing and service fees, the costs of the court reporter, and the commissioner's fee.

## DISCUSSION

On appeal, PMH argues that the circuit court erred in sustaining the Harts' exceptions to the commissioner's report because the propane tank and well, as modified by the commissioner's directive, would not unreasonably interfere with the Harts use and enjoyment of the easement for ingress and egress. PMH also assigns error to the circuit court's assessment of all costs of the proceedings against PMH, including the Harts' attorney's fees and the commissioner's fee.

## A. UNREASONABLE INTERFERENCE

We review the circuit court's sustaining of the Harts' exceptions to the commissioner's report in accord with familiar principles:

> While the report of a commissioner in chancery does not carry the weight of a jury's verdict, it should be sustained unless the trial court concludes that the commissioner's findings are not supported by the evidence. This rule applies with particular force to a commissioner's findings of fact based upon evidence taken in his presence, but is not applicable to pure conclusions of law contained in the report.

Hill v. Hill, 227 Va. 569, 576-77, 318 S.E.2d 292, 296 (1984) (internal citations omitted). Because the circuit court disapproved of the commissioner's findings, this Court must

5

review the evidence and ascertain whether, under a correct application of the law, the evidence supports the findings of the commissioner or the conclusions of the trial court.  See id. at 577, 318 S.E.2d at 296-97.  Having heard the testimony and reviewed the evidence at the hearing, the commissioner found that the modified well and propane tank would not unreasonably interfere with the Harts' use of the easement.  The circuit court should have sustained the commissioner's conclusion unless it was not supported by the evidence or was based on an erroneous application of the law.

The circuit court relied on Pizzarelle v. Dempsey, 259 Va. 521, 526 S.E.2d 260 (2000), and Snead v. C&S Properties Holding Co., 279 Va. 607, 692 S.E.2d 212 (2010), in reaching its conclusion that the propane tank and well encroached upon the Harts' easement.  PMH argues that the circuit court erred in its reliance on these cases because they address encroachments that block all or part of an easement, which would not be the case here after the modifications required by the commissioner. According to PMH, the circuit court should have analyzed whether its use was reasonable.  By contrast, the Harts interpret Pizzarelle and Snead to mean that questions of reasonableness are irrelevant in cases involving platted easements that have a certain width.

In *Pizzarelle*, the owner of the servient estate erected a fence and planted trees several feet within an easement, but outside of the gravel driveway used for ingress and egress. 259 Va. at 525, 526 S.E.2d at 262. The circuit court found that the encroachment was insubstantial and did not warrant injunctive relief. Id. at 530, 526 S.E.2d at 265. We reversed the circuit court, holding that "[t]o affirm the circuit court's denial of injunctive relief in this case would in effect allow the [servient tenant] to appropriate a portion of the easement and reduce a 24-foot easement to one of 19 to 20 feet in width." Id. at 531, 526 S.E.2d at 265. We explained: "Unlike some cases, the question here is not one of 'reasonableness' or whether the easement is now 'less useful or less convenient.'" Id. (quoting Willing v. Booker, 160 Va. 461, 466, 168 S.E. 417, 418 (1933)).

In *Snead*, the servient landowner erected a chain-link fence, placed signs, and installed riprap within the bounds of a 60-foot-wide easement, narrowing the effective width to 40 feet. 279 Va. at 610-11, 692 S.E.2d at 213-14. The circuit court held that the placement of these items did not unreasonably interfere with the use of the easement because the objects did not block the use of the gravel road in the easement. Id. at 612, 692 S.E.2d at 214. Relying on *Pizzarelle*, we reversed the circuit court, holding that the objects created "a material encroachment

7

on the dominant owners' rights because a significant portion of the easement would be rendered unusable for ingress and egress if injunctive relief were denied." Id. at 616, 692 S.E.2d at 216 (internal quotation marks and alteration omitted).

These cases establish that a servient landowner may not effectively narrow the defined width of an easement by placing obstructions amounting to "a material encroachment on the dominant owner['s] rights," 259 Va. at 530, 526 S.E.2d at 265 (emphasis added), even when the encroachment does not interfere with ingress and egress at that time. The Harts, however, do not contend that the propane tank and well, as modified, will effectively narrow their 30-foot easement. Rather, they rely on our observation in Willing that "where a reservation is of a certain width, that width cannot be encroached upon." 160 Va. at 465, 168 S.E. at 418. In the Harts' view, every encroachment, no matter how minor, is material when the easement is of an express width.

We do not agree. Our cases make clear that the owner of a servient estate may still make reasonable use of land burdened by an easement of defined width. See id. at 467-68, 168 S.E. at 419 (observing that servient tenant may place half of a fence of reasonable dimensions on dominant estate). An encroachment that does not narrow the width of an easement or unreasonably interfere with its use is not a material encroachment.

8

The Harts made no allegation that the tank and well would narrow their easement. Thus, the proper inquiry for the commissioner and the circuit court was whether the buried propane tank and well, if modified, would unreasonably interfere with the Harts' use. As we explained in Willing, "[w]hether or not [an] encroachment makes the way less useful or less convenient is usually a jury question," and "the test is reasonableness." Id. at 466, 168 S.E. at 418. As finder of fact, the commissioner concluded that the improvements would not constitute unreasonable interference if the well were modified and the propane tank were tested to ensure suitability for vehicular access. The circuit court should have ratified this conclusion unless it was not supported by the evidence. Hill, 227 Va. at 576-77, 318 S.E.2d at 296.

The Harts do not argue that the commissioner's finding is not supported by the evidence. Rather, they argue that even if PMH modified the well and took precautions with the propane tank, the improvements still would constitute unreasonable interference with the easement because of the possibility of a "catastrophe" occurring. The Harts cite the prospect of the propane tank exploding and the well cracking and becoming contaminated. According to the Harts, the tank and well present

9

risks of harm and liability to them and their invitees, and these risks lowered the value of their property.[1]

The Harts' arguments on appeal, however, are speculative. They are not based on any evidence adduced at the hearing. We will limit our review to the facts adduced before the commissioner.[2] PMH presented evidence that the fixtures could be modified and tested to ensure normal vehicular access with the approval of the local health department. By contrast, the Harts' only evidence relevant to their argument on appeal related to a potential buyer's concern about the narrowing of the easement, not an exploding propane tank or collapsing well.

Upon review of the record and under a correct application of the controlling law, we find that the evidence supports the findings of the commissioner and not the conclusions of the circuit court. Id. at 577, 318 S.E.2d at 296-97. The circuit court erred in sustaining the Harts' exceptions.

B. AWARD OF COSTS AND ATTORNEY'S FEES

---

[1] Because the issue is not properly before us, we do not decide whether conduct by a servient landowner affecting the value of the dominant estate alone constitutes a basis for a finding of unreasonable interference and awarding injunctive relief.

[2] The Harts advance no evidence or argument regarding state regulations or local ordinances relating to wells or propane tanks being located in an easement. We do not address the issue of whether it is permissible under state or local regulations to bury a propane tank or drill and maintain a well in an easement used for vehicular access.

We now turn to PMH's argument regarding the imposition of costs and attorney's fees. Because the circuit court's basis for the award of attorney's fees was distinct from its decision to award costs, we will address the issues separately.

## 1. COSTS

It is well-established that "[i]n equity, the trial court has discretion in the award of costs; nevertheless, we have found an abuse of that discretion if costs are not awarded in favor of the party or parties substantially prevailing." Smith v. Woodlawn Constr. Co., 235 Va. 424, 431, 368 S.E.2d 699, 703 (1988) (internal citations and quotation marks omitted). Because the circuit court erred in ordering PMH to remove the propane tank and well from the easement, the Harts did not prevail entirely in their suit. The Harts did, however, substantially prevail because the commissioner concluded that the electric box, generator, trees and mulch interfered with the use of the easement and ordered their removal. The circuit court ratified those findings. Consequently, the circuit court did not abuse its discretion in awarding costs to the Harts.

## 2. ATTORNEY'S FEES

The "American rule" provides that "'attorneys' fees are [ordinarily] not recoverable by a prevailing litigant in the absence of a specific contractual or statutory provision to the contrary.'" Nusbaum v. Berlin, 273 Va. 385, 400, 641 S.E.2d

11

494, 501 (2007).  The circuit court awarded the Harts their attorney's fees pursuant to Rule 4:12(c) because PMH failed to admit that it "[had] no defenses to the [Harts'] claims."  We review the circuit court's decision to award attorney's fees for an abuse of discretion.  Erie Ins. Exchange v. Jones, 236 Va. 10, 14, 372 S.E.2d 126, 128 (1988).

Rule 4:12(c) states:

> If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 4:11, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that (1) the request was held objectionable pursuant to Rule 4:11(a), or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe that he might prevail on the matter, or (4) there was other good reason for the failure to admit.

Rule 4:11(a) provides, in relevant part, that "[a] party may serve upon any other party a written request for the admission . . . of the truth of any matters within the scope of Rule 4:1(b) set forth in the request that relate to statements or opinions of fact or of the application of law to fact."

The Harts' request for admission did not comply with this rule.  Their argument, in conjunction with Rule 4:12(c), would render the American Rule of attorney's fees defunct in many

12

contested proceedings when the requesting party ultimately prevailed on the merits of a case.  We find that the Harts' request was not a proper discovery request under Rule 4:11 and therefore that "there was other good reason for the failure [of PMH] to admit" that it had no defenses.  Rule 4:12(c)(4).  Consequently, we hold that the circuit court abused its discretion in awarding attorney's fees to the Harts.

CONCLUSION

For the reasons stated, we will reverse the judgment of the circuit court insofar as it sustained the Harts' exceptions regarding the buried propane tank and well.  We will affirm the circuit court in its award of costs to the Harts and reverse the circuit court in its award of attorney's fees to the Harts.  We will remand the case to the circuit court for further proceedings consistent with this opinion.

<u>Reversed in part,
affirmed in part,
and remanded.</u>